# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL A. CICOLELLO and** | : | |
| **DOROTHY DeMARIA, h/w,** | : | |
| **Plaintiffs,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | **No.  2: 06 - 3327** |
| **CATERPILLAR INC.** | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

DAVID R. STRAWBRIDGE                                      January 18, 2008
UNITED STATES MAGISTRATE JUDGE

**I.      Introduction**

Plaintiffs Michael Cicolello and his wife, Dorothy DeMaria (alternatively "Plaintiff" or "Mr. Cicolello") brought this action against, *inter alia*, Defendant Caterpillar Inc. (alternatively "Defendant" or "Caterpillar").  Mr. Cicolello seeks monetary relief for physical harm resulting from an accident in which his hand was caught in an in-running nip point of a sheave block attached to a Caterpillar Model 571G Pipelayer (the "Pipelayer").  Ms. DeMaria seeks damages for loss of consortium. The parties consented to magistrate judge jurisdiction.  (Doc. 26).

This Memorandum follows upon the Court's denial of Defendant's Motion *in Limine* to Preclude the Testimony of G. Fred Liebkemann IV, P.E. (Doc. 40, "Def. Mot. to Exclude Mr. Liebkemann") and Defendant's Motion *in Limine* to Preclude the Testimony of Vaughn P. Adams Jr., Ph.D, P.E.  (Doc. 55, "Def. Mot. to Exclude Dr. Adams") at the conclusion of an evidentiary hearing and oral argument held on January 16, 2008 regarding these motions and Defendant's motion for a risk-utility hearing.  Given the representations of the parties about the scope of the examination of Dr. Adams, Defendant withdrew the motion pertaining to Dr. Adams, but reserved the right to

renew it depending upon the presentation of evidence from Dr. Adams at trial.  We accepted this reservation.  We otherwise denied the motion as moot.  We thus proceed to discuss the denial of the challenge to Mr. Liebkemann.

## II.    The *Daubert* Standard

Admission of expert testimony under Federal Rule of Evidence 702[1] is guided by the United States Supreme Court's ruling in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). The Supreme Court has charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony.[2]  *Id.* at 597.  This responsibility extends to testimony based not only on scientific knowledge but to testimony based on technical or other specialized knowledge as well.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).  The Third Circuit requires this Court to address a "trilogy of restrictions" on the admissibility of expert testimony under Rule 702. *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 320-21 (3d Cir. 2003).  First, the witness must be qualified as an expert.  Second, the testimony must be reliable.  Third, the expert testimony must "fit," meaning it must be relevant and assist the trier of fact.  *Id.*

As was confirmed at the final pre-trial conference (*see* Pre-trial Conf. Tr. at 33), Defendant does not challenge Mr. Liebkemann with regard to the first and third restrictions of qualification and

---

[1] Rule 702 provides that "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

[2] Federal Rule of Evidence 104(a) provides that "[p]reliminary questions concerning the qualification of a person to be a witness ... or the admissibility of evidence shall be determined by the court."

2

fit.  Defendant only challenges the reliability of the opinions to be offered.  (*See* Def. Mot. to Exclude Mr. Liebkemann at 6, 18).  As for the question of reliability, the proper inquiry "is not whether a particular scientific opinion has the best foundation or whether it is demonstrably correct. Rather, the test is whether 'the particular opinion is based on valid reasoning and reliable methodology.'" *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000) (citation omitted).  Both the Supreme Court and the Third Circuit have set out various lists of factors relevant to determining the reliability of an expert's testimony.[3]  The test of reliability, however, is flexible.  The various factors do not necessarily apply to all experts or every case.  *Kumho Tire Co.*, 526 U.S. at 141. "Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination."  *Id.* at 142 (emphasis in original).

## III.   Admissibility of Mr. Liebkemann's Testimony

As Plaintiff succinctly summarizes, Mr. Liebkemann's testimony and conclusions are based on a review of the accident scenario, including both Plaintiff's version of the accident and the

---

[3] These factors include, but are not limited to: (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.  *Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 742 (3d Cir. 1994).  We note that to the extent that these factors are even applicable to testimony regarding a relatively simple mechanical design such as a sheave guard, we are satisfied that Mr. Liebkemann generally meets them.  His method of devising a workable guard certainly consists of a testable hypothesis, and the general design and methodology behind devising such a guard has been subject to peer review and enjoys general acceptance, as is evidenced by the century's worth of guarding patents and safety standards that exist.  (*See, e.g.*, *Daubert* hearing Exhibits 27, 28 and 58).  Further, as discussed above, Defendant does not challenge his qualifications.

versions of other witnesses; a review and formulation of design alternatives; a review of relevant

literature, including over 100 years worth of product patents and relevant regulatory and industry

safety standards; a review and use of relevant design criteria; and, finally, his own 18 years worth

of relevant experience and specialized knowledge.  (Doc. 43, Pl. Mem. in Opposition at 15).  Like

other courts in our circuit, we accept that the "valid reasoning and reliable methodology" standard

as set out in *Oddi*, 234 F.3d at 146, is sufficient to meet the requirements of Rule 702.  *See, e.g.,*

*Betterbox Communs., Ltd. v. BB Techs., Inc.*, 300 F.3d 325 (3d Cir. 2000); *Tormenia v. First*

*Investors Realty Co.*, 251 F.3d 128 (3d Cir. 2000); *St. Paul Fire & Marine Ins. Co. v. Nolen Group,*

*Inc.*, Civ. A. No. 02-8601, 2005 U.S. Dist. LEXIS 9303 (E.D. Pa. 2005); *Protocomm Corp. v. Novell*

*Advanced Servs.*, 171 F. Supp.2d 473 (E.D. Pa. 2001); *Total Control, Inc. v. Danaher Corp.*, 338

F. Supp. 2d 566 (E.D. Pa. 2004); *Robinson v. Hartzell Propeller, Inc.*, 326 F. Supp.2d 631 (E.D. Pa.

2004); *Westley v. Ecolab, Inc.*, Civ. A. No. 03-1372, 2004 U.S. Dist. LEXIS 9936 (E.D. Pa. May 12,

2004); *Fisher v. Walsh Parts & Serv. Co.*, 277 F. Supp.2d 496 (E.D. Pa. 2003); *United States v.*

*Plaza*, 188 F. Supp.2d 549 (E.D. Pa. 2002); *Lindsey v. Caterpillar*, Civ. No. 03-5762, 2007 U.S.

Dist. LEXIS 45452 (D.N.J. June 22, 2007).  We are satisfied that Mr. Liebkemann's conclusions

meet this standard.

      In our analysis, we have considered the thoughtful points raised by counsel for the Defendant.

Defendant argues, for example, that Mr. Liebkemann improperly cites to certain industry and

regulatory standards which are inapplicable to the Pipelayer.  (Def. Mot. to Exclude Mr. Liebkemann

at 6-7).  It notes that in some instances Mr. Liebkemann cites to standards that are applicable to

pulleys in general rather than those specifically applicable to the Pipelayer.  (*See, e.g.*, *id.*, Ex. B at

67).  While this may be the case, and would certainly be proper for Defendant to raise at trial, we

4

accept that discussions about how to guard against in-running nip point hazards apply in many different construction and industrial uses. While these limitations may undermine the reliability of his testimony, we believe that the question of whether safety standards which are applicable to a general product should also be applicable to a specific sub-set of that product is a question for the trier of fact as it considers the weight of Mr. Liebkemann's testimony.

Caterpillar also argues that Mr. Liebkemann, in the development of his alternate design (specifically a "sheave guard" which would have prevented the injury at issue here), failed to support his conclusion with adequate testing. (*See, e.g.*, Def. Mot. to Exclude Mr. Liebkemann at 8, 13). As Plaintiff points out, however, testing is not an absolute prerequisite to the admission of an expert opinion. (Pl. Mem. in Opposition at 15-16). This is particularly the case when the design at issue is a rather simple one that has generally been in existence for over a century. *See, e.g., Meeks v. APV Ltd.*, Civ. A. No. 00-4191, 2002 WL 32348524, *2-*3 (E.D. Pa. Feb. 5, 2002). Rather, testing is simply one of many factors to be considered with regard to an expert's testimony. *Daubert*, 509 U.S. at 593. We also take into consideration the fact that a plaintiff of limited means will frequently be unable to arrange for such adequate testing, and we note that Caterpillar itself has failed to provide in their papers or at the hearing any evidence of any testing done by its experts to support its conclusion that such a sheave guard would indeed fail when applied in the field.

We appreciate that the adequacy of testing is a significant issue in this case but determine that it is an issue for the trier of fact. We thus conclude that, when considered in relation to the full scope of Mr. Liebkemann's conclusions and his reasons in support, the questions with respect to the

5

adequacy of the testing do not lead us to exclude his testimony.[4]  We accept the rationale of the district court of New Jersey that "to the extent . . . lack of testing calls into question the reliability of [the expert's] testimony, such lacunae are best addressed at trial, under cross-examination." *Lindsey*, 2007 U.S. Dist. LEXIS 45452 at *14.

An appropriate order, which this memorandum supports, was entered on January 17, 2008. (Doc. 77).

BY THE COURT:

/s/ David R. Strawbridge
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE

---

[4] We also note that to the extent that Mr. Liebkemann failed to test his proposed guard design for the lower traveling block, he testified that he did, in fact, submit such a design for consideration of a possible patent application.  Apparently this application was never submitted, however, as Mr. Liebkemann's patent attorney learned that there were existing patents covering essentially the same design.  (*See, e.g.*, Pl. Mem. in Opposition at 4-5).